UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Government,<br><br>v.<br><br>MALIEK MILLER,<br><br>Defendant. | **MEMORANDUM AND ORDER**<br><br>20-CR-331-LDH |

LASHANN DEARCY HALL, United States District Judge:

Maliek Miller ("Defendant") moves, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, for a judgment of acquittal or for a new trial following his conviction on all counts contained in the second superseding indictment. (Superseding Indictment ("Indictment"), ECF No. 92.)

**BACKGROUND**

On June 29, 2023, Defendant was indicted on seven counts: (1) racketeering in violation of 18 U.S.C. §§ 1961(1) and 1961(5); (2) conspiracy to distribute or possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(D), 846; (3) conspiracy to commit murder-in-aid-of racketeering for killing Shatavia Walls, in violation of 18 U.S.C. § 1959(a)(5); (4) murder in-aid-of racketeering for killing Shatavia Walls, in violation of 18 U.S.C. §§ 1959(a)(1) and 2; (5) unlawful use of firearms, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2; (6) causing the death of Shatavia Walls through use of firearms, in violation of 18 U.S.C. §§ 924(j)(1), 2; and (7) being a felon in possession of a firearm, in violation of 18 U.S.C. §§

922(g)(1), 924(a)(2). (Superseding Indictment, Counts I-VI, VIII, ECF No. 92.) According to the Superseding Indictment, Defendant, as a member and associate of the Ninedee Gang, "engaged in drug trafficking, access device crimes, acts of violence, including acts involving murder and assault, and other crimes." (*Id*. ¶¶ 1, 6.)

On May 13, 2024, Defendant's case proceeded to trial. Following the close of the Government's case, Defendant notified the Court that he will be making a Rule 29 and Rule 33 motion in writing and chose to forgo an oral motion at the time. (Trial Tr. 2806:4-20, ECF No. 219.) On June 6, 2024, the jury returned a verdict of guilty on all counts. (Jury Verdict, ECF No. 226.) Following the verdict, Defendant moved, pursuant to Rule 29 and 33 of the Federal Rules of Criminal Procedure, to set aside the verdict or, alternatively, for a new trial. (*See* Def.'s Mem. L. Supp. Mot. J. Acquittal and Mot. New Trial ("Def.'s Mem."), ECF No. 245.) Specifically, Defendant challenges the sufficiency of the evidence presented by the Government and argues that his motions should be granted because: (1) the Government failed to prove Defendant and others conspired to distribute marijuana or possess with intent to distribute marijuana; (2) the Government failed to prove Defendant played a role in the death of Shatavia Walls; and (3) the Government failed to prove Defendant engaged in violent conduct to gain, maintain, or increase his position in the Ninedee Gang. (Def.'s Mem. at 13-20.)

## DISCUSSION

### I. Rule 29: Motion for Acquittal

Under Rule 29, a defendant challenging a jury's guilty verdict "bears a heavy burden," *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (citation omitted). Indeed, the standard of review has been described as "exceedingly deferential." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (citation omitted). As such, in considering a motion for judgment

of acquittal, the court must view the evidence in the light most favorable to the Government, *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003), "crediting every inference that could have been drawn in the [G]overnment's favor," *Martoma*, 894 F.3d at 72 (quotation omitted). Most fundamentally, when considering a Rule 29 motion, "courts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *Jackson*, 335 F.3d at 180 (citation omitted). That is, the "resolution of the weight of the evidence and the credibility of the witnesses" are "the province of the jury and not of the court." *United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) (internal quotation marks and citations omitted). Notably, "[a] 'jury's verdict may be based entirely on circumstantial evidence.'" *United States v. Berry*, No. 20-CR-84, 2022 WL 1515397, at *4 (S.D.N.Y. May 13, 2022) (quoting *United States v. Sureff*, 15 F.3d 225, 228 (2d Cir. 1994)). "[S]o long as ... inference[s are] reasonable, 'it is the task of the jury, not the court, to choose among competing inferences.'" *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (citation omitted). Accordingly, a Rule 29 motion may be granted "only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (citation omitted).

**A. Conspiracy to Distribute or Possesses with Intent to Distribute Marijuana**

To prove the crime of conspiracy the Government must show: "(1) that the defendant agreed with at least one other person to commit an offense; (2) [that] the defendant knowingly participated in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy; and (3) that during the existence of the conspiracy, at least one of the overt acts set forth in the indictment was committed by one or more of the members of the conspiracy." *United States v. Capri*, 111 F. App'x 32, 34 (2d Cir. 2004) (internal quotes

omitted). Importantly, the agreement between parties does not need to be "formal or express," *id.*, and the Government may use circumstantial evidence to prove the existence of the conspiracy "provided such evidence establishes beyond a reasonable doubt the defendants' knowledge of the essential nature of the plan and their connections with it." *United States v. Downing*, 297 F.3d 52, 57 (2d Cir. 2002) (internal quotes omitted).

The Government met this burden. There was ample evidence presented at trial that showed Defendant, along with various members of the Ninedee Gang, agreed to distribute and possess with the intent to distribute marijuana, and knowingly and voluntarily did so. This evidence included (1) the Defendant's text messages and Facebook posts marketing marijuana for sale and delivery; (2) text messages between Defendant and other Ninedee Gang members discussing the sale and distribution of marijuana, including profit sharing; and (3) witness testimony describing how, when, and where Defendant, as a Ninedee Gang member, engaged in the distribution and sale of marijuana and how the profits derived from that sale and distribution were reinvested in the criminal enterprise. (*See, e.g.*, Trial Tr. 1117:17-1129:5 (describing the mechanism of the Ninedee Gang's drug enterprise, Defendant's participation, and the use of profits to help the Gang purchase weapons and rent cars)); (Gov't's Mem. L. Opp'n. Def's. Mot. Acquit. and Mot. New Trial ("Gov't's Opp'n.") at 33–36, ECF No. 250.)

Against this backdrop, Defendant argues that none of the evidence or testimony presented by the Government showed a "meeting of the minds" between Defendant and any other individual "for the purposes of the distribution of marijuana." (Def.'s Mem. at 15.) Instead, according to the Defendant, the evidence presented by the Government exclusively showed the existence of an "open-air drug market at the Pink Houses, and that some of the sellers were residents and friends, and family members and itinerants." (*Id.*) Defendant's characterization of

the evidence presented strains credulity. As discussed above, the evidence presented speaks to far more than a "loosely knit group of residents" who sold drugs on an "ad-hoc" basis. (*Id.*) Moreover, the case law makes clear that the Government need not show a "formal or express" agreement between Defendant and other Ninedee Gang members to engage in the conspiracy and can "rely on proof that the parties have a tacit understanding to engage in the offense." *United States v. Amato*, 15 F.3d 230, 235 (2d Cir. 1994) (citation omitted). The Government did just that. The evidence presented shows Defendant actively engaged with other Ninedee members to plan and execute the sale and distribution of marijuana for collective benefit. Thus, Defendant's challenge to the jury's finding as to Counts One and Two as "mere conjecture" must be rejected. (Def.'s Mem. at 16.)

**B. Defendant's Role in the Death of Shatavia Walls**

The core of Defendant's argument as to why he is entitled to an acquittal or the grant of a new trial rests on the proclaimed insufficiency of the testimony provided by Chayanne Fernandez, the Government's cooperating witness. (Def.'s Mem. at 17-19.) Mr. Fernandez's testimony[1] was the primary link between Defendant and the murder of Shatavia Walls. (*See* Gov't's Opp'n. at 19-21.) It was this testimony that the Government used to establish Defendant's motivations to kill Ms. Walls and the steps Defendant took with other Ninedee Gang members to effectuate the murder of Ms. Walls. (*Id.* at 19-20.) Per the Defendant, Mr. Fernandez's testimony should be ignored by the Court because: (1) "Mr. Fernandez was

[1] Mr. Fernandez testified over a two-day period and was cross-examined by Defendant's counsel at length. (*See* Trial Tr. May 20, 2024, ECF No. 262; Trial Tr. May 21, 2024, ECF No. 263.). Mr. Fernandez described the culture of the Ninedee Gang, and the expectations the gang had for its members. (Trial Tr. 1042:23-1046:11.) The testimony also explained what made Ms. Walls a target: (1) her marriage to a rival gang member; (2) her previous cooperation with the Government and testimony against a Ninedee Gang member; and (3) the physical altercation she had with Defendant and his cousin days before her murder. (*See, e.g.*, Trial Tr. 1061:5-14; 1168:6-1176:5; 1199:24-1210:22; 1261:12-1311:2). Mr. Fernandez explained how Defendant recruited junior Ninedee members to carry out the murder, obtained weapons, and gave the direction to kill Ms. Walls. (Trial Tr. 1261:12-1311:2.)

incredible as a matter of law"; and (2) because Mr. Fenandez's testimony was part of a "series of shifting stories as to who was there, and who planned the murder of Shatavia Walls." (Def.'s Mem. at 17-18.)

The Defendant's briefing offers little explanation as to what makes Mr. Fernandez's "incredible as a matter of law". (*Id*. at 17.) *First*, it is not the witness himself that can be challenged as "incredible as a matter of law" but the testimony that the witness provides. As the Second Circuit makes clear, "a federal conviction may be supported 'by the uncorroborated testimony' of even a single accomplice witness 'if that *testimony is not incredible* on its face and is capable of establishing guilt beyond a reasonable doubt.'" *United States v. Florez*, 447 F.3d 145, 155 (2d Cir. 2006) (quoting *United States v. Parker*, 903 F.2d 91, 97 (2d Cir.1990) (emphasis added)). Here, Mr. Fernandez's testimony was not the only supporting evidence the Government provided for Defendant's conviction, (Gov't's. Opp'n. at 20), and Defendant does not specify what about Mr. Fernandez's testimony can be considered incredible as a matter of law. (Def.'s Mem. at 17.) *Second*, even if Mr. Fernandez's testimony was, as the Defendant alleges, part of a "series of shifting stories" regarding Ms. Walls' murder that the Government presented, this factor speaks to Mr. Fernandez's credibility and does not render his testimony incredible as a matter of law. *See United States v. Truman*, 688 F.3d 129, 140 (2d Cir. 2012). It is long established that it is the province of the jury, not of the Court, to assess the credibility of a witness.[2] *Id*.

As the Government's brief aptly shows, Mr. Fernandez's testimony was heavily corroborated by "witness testimony, text messages, cell site location information, video

---

[2] Defendant challenged the credibility of Mr. Fernandez as a witness at various points during the trial. (Trial Tr. 686:11-687:2; 1435:7-1446:24.)

surveillance, social media records, business records, YouTube videos, recorded phone calls from the Bureau of Prisons (BOP), ballistics evidence, data obtained through forensic extraction of cell phones and other evidence." (Gov't's. Opp'n. at 20-22.) Nevertheless, Defendant argues that the evidence presented to the jury equally supported the possibility that it was Mr. Fernandez, and his close associate David Vasquez, that "occasioned the murder of Ms. Wall[s]" and that the existence of this other possibility does not allow a "reasonable juror to find [Defendant] guilty beyond a reasonable doubt." (Def.'s Mem. at 10.) This is immaterial. It is not the Court's role to determine which inferences a jury should have made or which competing possibilities a jury should have credited. *See Santos*, 541 F.3d at 70. Where, as in here, "either of the two results" is "fairly possible, the court must let the jury decide the matter." *Id*. (citing *United States v. Autuori,* 212 F.3d 105, 114 (2d Cir.2000)). The jury, after careful evaluation of the testimony and evidence provided by the Government, found Defendant guilty beyond a reasonable doubt. The Court may not supplant the jury's determination with its own unless the evidence offered is essentially "nonexistent." *Guadagna*, 183 F.3d at 130. By the Defendant's own admission, that is not the case here. (*See* Def.'s Mem. at 10, 19 (illustrating the alternative ways the evidence can be interpreted and describing the evidence showing Defendant was behind the murder of Ms. Walls as "tenuous")). Therefore, Defendant's challenge to the jury's findings as to Counts One (i.e. Racketeering Act Two), Three, Four, and Six must be rejected.

**C. Defendant's Motivations for Engaging in Violent Conduct**

Lastly, the Defendant argues that there was insufficient evidence to suggest that "any motive" he may have had "for the death of Shatavia Walls" was to "solidify his position within [the Ninedee Gang] or enhance his role within the [Ninedee Gang]." (*Id*. at 20.) Instead, the

Defendant contends, any motive he may have had for the murder of Ms. Walls was for "personal revenge for being disrespected and to protect himself from future attacks." (*Id.*) This argument fails for the same reasons discussed above.

As explained *supra* §I.B, it is not the Court's role to determine what inferences a jury should make based on the evidence presented and may not supplant the jury's determination with its own. When it comes to determining Defendant's motivation, it is enough "if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992). There is no requirement that the jury determine that the motivation to maintain or enhance his role in the Ninedee Gang was Defendant's primary or sole motivation. *See id*. Here, presented with competing narratives as to the evidence regarding the Defendant's motivations, the jury made a determination that the Defendant was motived by maintaining or increasing his position in the Ninedee Gang. In making its determination, the jury weighed testimony from Mr. Fernandez regarding how and why Ms. Walls was specifically targeting, the expectation there was to retaliate within in the Ninedee Gang against rivals and those perceived as "rats," such as Ms. Walls, and how members increased their position within the gang by carrying out such retaliatory attacks for "points." (Gov't's Opp'n. at 27-28.) The jury also saw social media evidence that corroborated the above. (*Id*. at 29-30, 32.) The Court cannot say the jury made this determination on insufficient, let alone "nonexistent", evidence. *Guadagna*, 183 F.3d at 130. Accordingly, Defendant's challenge to his conviction on Counts Three and Four must be rejected and his Rule 29 motion denied.

## II. Rule 33: Motion for a New Trial[3]

Under Rule 33 of the Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33, by its terms, gives the trial court "broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992); *see also United States v. Robinson*, 430 F.3d 537, 543 (2d Cir. 2005). Indeed, a "trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29 . . ." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *Sanchez*, 969 F.2d at 1414). Notwithstanding, a trial court "must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *Id.* (quoting *Sanchez*, 969 F.2d at 1414).

"In evaluating a Rule 33 motion, the court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation, keeping in mind that the ultimate test for such a motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (internal quotations omitted). Importantly, the court "must strike a balance between weighing the evidence and credibility of witnesses and not wholly usurp[ing] the role of the jury," which is tasked with resolving conflicting evidence and assessing witness credibility. *Ferguson*, 246 F.3d at 133 (citations and quotation marks omitted); *United States v. Landesman*, 17 F.4th 298, 330 (2d Cir. 2021). Thus, "a district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be 'manifest injustice' to let the verdict stand." *United States v. Archer*, 977 F.3d

[3] Under Rule 29(d), "[i]f the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted." Fed. R. Crim. P. 29(d).

181, 188 (2d Cir. 2020) (quoting *Sanchez*, 969 F.2d at 1414). That is, "under [Rule 33], a district court may not 'reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.'" *Id.* (quoting *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997)) Only in "exceptional circumstances" where, for example, "there is a real concern that an innocent person may have been convicted. . . [or] an evidentiary or instructional error compromised the reliability of the verdict. . . or where the government's case depends upon strained inferences drawn from uncorroborated testimony" should a court grant a new trial. *Landesman*, 17 F.4th at 331 (internal quotes omitted); *see also Ferguson*, 246 F.3d at 133–34 ("It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment [under Rule 33]." (Walker, J. concurring) (internal quotation marks omitted) (citing *Sanchez*, 969 F.2d at 1414).

Defendant moves for a new trial on the same basis that he unsuccessfully moved for acquittal, namely that the testimony of Chayanne Fernandez was insufficient to find Defendant guilty. (Def.'s Mem. at 23.) As discussed *supra* §1.B, the Court has already found this argument lacking. The Court cannot and does not credit this argument as a basis to grant a new trial. Defendant's Rule 33 motion for a new trial is denied.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to set aside verdict and/or grant a new trial, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
September 28, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge